UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:17-cv-62416-MGC

BILAL SALEH, individually and
on behalf of others similarly situated,

    Plaintiff,

v.

CRUNCH, LLC, a Delaware limited liability
company; CRUNCH FRANCHISING, LLC, a
Delaware limited liability company; and DELIU,
LLC, a Delaware limited liability company, doing
business as "Crunch Fitness Oakland Park",

    Defendants,
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
FOR ATTORNEY'S FEES AND OTHER NON-TAXABLE COSTS**

Plaintiff BILAL SALEH hereby submits his response in opposition to Defendants' Motion for Attorney's Fees and Other Non-Taxable Costs [ECF No. 79]. For the reasons expressed herein, Plaintiff respectfully submits that Defendants' motion must be denied.

## INTRODUCTION

Defendants move for attorneys' fees against Plaintiff and his counsel on grounds that "much, if not all" of Plaintiff's claims lacked a legal and factual basis to file suit. Specifically, Defendants claim that Plaintiff "did not in fact visit Defendants' website," and that consequently, this case "should have never been filed." (Def. Mot. for Attorney's Fees., ECF No. 79, p. 5).

Defendants' accusations are patently wrong. All of the allegations set forth in the Complaint are demonstrably true, correct, and accurate. Defendants have identified no conduct on the part of Plaintiff or his attorneys that was unreasonable, vexatious, or taken in bad faith. In consequence, Defendants' motion must be denied.

## BACKGROUND

This case was about Defendants' wide-scale violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* On or about November 28, 2017, Plaintiff visited Defendants' website, selected a "FREE TRIAL" link, and filled out a web form for a "free 1-day pass" to a Crunch gym. *See Compl.*, [ECF No. 1, ¶ 20]. The form asked for Plaintiff's personal contact information, including his cellular telephone number. *Id.* at ¶ 21. Plaintiff entered this information on the form, submitted it, and received a response stating "Thanks for expressing interest in Crunch. Check your email for your free pass. We'll see you soon and sweaty!" *Id.* at ¶ 22. Nowhere in this process did Plaintiff ever provide his prior express consent to receive automated text messages, as required by the TCPA.

One day after submitting the form, Plaintiff began receiving automated text messages from Defendants on his cellular telephone. *Id.* at ¶¶ 22-24. Plaintiff inferred that Defendants must have harvested his contact information from the web form to send him text message advertisements. Based upon this, Plaintiff determined that Defendants were operating their text message marketing program in violation of the TCPA. Plaintiff further determined that Defendants had been committing these violations *en masse*, unlawfully harassing thousands of individuals with telemarketing messages. Plaintiff then commenced this putative class action lawsuit on December 8, 2017. *See Compl.*, [ECF No. 1].

Shortly after bringing this action, Plaintiff began a rigorous discovery campaign to prosecute the case. Plaintiff served his first set of discovery requests on each Defendant on February 15, 2018, which included, for each Defendant, a set of interrogatories, requests for production, and requests for admissions.

All of the responses to this discovery confirmed the allegations in the Complaint and Plaintiff's theory of the case. On March 26, 2018, Defendants CRUNCH, LLC and CRUNCH FRANCHISING, LLC provided their answers to Plaintiff's first round of discovery.[1] In Plaintiff's First Set of Interrogatories, both CRUNCH, LLC and CRUNCH FRANCHISING, LLC were asked to "[s]tate the manner in which you obtained telephone number (954) 536-2131, from who it was obtained, and when it was obtained." *See Exhibits A and B*, p. 10, Interrogatory No. 12. Both Defendants responded, in pertinent part, as follows: "**On November 28, 2017, Plaintiff visited Crunch's website, filled out a free trial form, and affirmatively and voluntarily input his mobile number on the free trial form.**" *Id.* (emphasis supplied).

Similarly, Defendant DELIU, LLC provided its own answers to Plaintiff's first set of discovery requests on April 19, 2018.[2] DELIU, LLC was also asked to "[s]tate the manner in which you obtained telephone number (954) 536-2131, from who it was obtained, and when it was obtained." *See Exhibit C*, p. 9, Interrogatory No. 12. Defendant DELIU, LLC, also responded that "**On November 28, 2017, Plaintiff visited Crunch's website, filled out a free trial form, and affirmatively and voluntarily input his mobile number on the free trial form.**" *Id.* (emphasis supplied).

Further, Defendants CRUNCH, LLC and CRUNCH FRANCHISING, LLC produced an activity log showing Plaintiff's history of interacting with their website.[3] *See Exhibit D*. This log was produced internally by Defendants' customer relationship management software called

---

[1] CRUNCH, LLC and CRUNCH FRANCHISING, LLC's Responses and Objections to Plaintiff's First Set of Written Discovery Requests to Defendants are attached hereto and incorporated herein as *Exhibit A and B*, respectively.
[2] DELIU, LLC's Responses and Objections to Plaintiff's First Set of Written Discovery Requests to Defendants are attached hereto and incorporated herein as *Exhibit C*.
[3] This log was produced to Plaintiff on March 26, 2018, at Bates Numbers CRUNCH000092 and CRUNCH000093. It is attached hereto and incorporated herein as *Exhibit D*.

3

"Hub Spot." *See id.* The log shows Plaintiff's visit to the Crunch website on November 28, 2017, along with the free trial form he submitted on Defendants' web form. *Id.* It also shows Plaintiff's subsequent visits to the website and indicates when Plaintiff opened and read the marketing emails sent to him by Defendants. *Id.* Based upon this, there is no doubt that Plaintiff visited the website on November 28, 2017.

Defendants' other discovery responses revealed that they used a third-party vendor named "Textmunication" to send the text messages at issue in this case. *See Exhibit C*, p. 6, Interrogatory No. 6. ("Crunch Oakland Park states that it used the Textmunication web portal to send out the message."). In light of this, Plaintiff a served a subpoena for deposition on TEXTMUNICATION, INC., the proprietor of the "Textmunication" service. That deposition took place on April 13, 2018.

At its deposition, TEXTMUNICATION, INC.'s designated witness, Wais Asefi, confirmed that it did indeed send the text messages at issue in this lawsuit on behalf of Defendant DELIU, LLC. *See* (Dep. of Wais Asefi, pp. 26:9-28:9, 71:4-22, *Exhibit E*). Mr. Asefi also testified that it sends automated text messages on behalf of numerous other franchisees of Crunch. *Id.* at 81:12-85:4. Based upon this, Plaintiff noticed the depositions of these other Crunch franchisees to determine the true scope of Defendants' unlawful conduct, as Plaintiff sought to obtain relief for the widest possible class.

On May 17, 2018, before Plaintiff could take any of these depositions, Defendants took Plaintiff's deposition. There, Plaintiff testified that he did not recall visiting the Crunch website. In light of this, although the history of this case demonstrates that Plaintiff did indeed visit Crunch's website on November 28, 2017, the undersigned counsel nonetheless concluded that

4

Plaintiff was not a suitable class representative. Consequently, Plaintiff immediately sought voluntary dismissal of this case pursuant to Rule 41 of the Federal Rules of Civil Procedure.

## ARGUMENT

**I.  Defendants Are Not Entitled to Attorneys' Fees Under 28 U.S.C. § 1927.**

    A.  Standard for Sanctions Under 28 U.S.C. § 1927.

28 U.S.C. § 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." However, section 1927 "is not a 'catch-all' provision for sanctioning objectionable conduct by counsel." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (citing *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)). "To justify an award of sanctions pursuant to section 1927, an attorney must engage in unreasonable *and* vexatious conduct; this conduct must multiply the proceedings; and the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *Id.* (citing *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir.2001), *amended on reh'g*, 311 F.3d 1077 (11th Cir.2002), *cert. denied sub nom. Nemesis Veritas, L.P. v. Toto*, 539 U.S. 914, 123 S.Ct. 2273, 156 L.Ed.2d 129 (2003)). "For sanctions under section 1927 to be appropriate, something more than a lack of merit is required." *Id.*

In order to meet their burden under 28 U.S.C. § 1927, Defendants must show conduct by Plaintiff or his attorneys that was unreasonable and vexatious. *Schwartz*, 341 F.3d at 1225. "The standard for imposing § 1927 sanctions is necessarily high; such sanctions are 'penal in nature' and, accordingly, 'the [Court's] power ... should be exercised only in instances of a serious and

5

studied disregard for the orderly processes of justice.'" *United States v. Group*, 12-61011-CIV, 2013 WL 12177058, at *2 (S.D. Fla. July 1, 2013) (internal citations omitted). Defendants have failed to carry this high burden.

    B.  <u>All of the Allegations Set Forth in the Complaint Are True.</u>

Defendants argue that they are entitled to attorneys' fees under 28 U.S.C. § 1927 because "Plaintiff's attorneys should have known that much, if not all, of their client's claims lacked the legal and factual basis necessary to file suit." (Def. Mot. for Atty's Fees, ECF No. 79, p. 5). This is demonstrably false. All discovery taken in this case to date confirms the allegations in the Complaint. Defendants themselves repeatedly stated in their discovery responses that Plaintiff visited their website on November 28, 2017, and that was how Defendants obtained Plaintiff's cellular telephone number: "**On November 28, 2017, Plaintiff visited Crunch's website, filled out a free trial form, and affirmatively and voluntarily input his mobile number on the free trial form.**" *See Exhibits A, B*, and *C*, Interrogatory No. 12. It is duplicitous for Defendants to claim during discovery that Plaintiff visited their website, only to later deny the same simply because Plaintiff did not recall the visit during his deposition.

At his deposition, Plaintiff testified only that he did not recall visiting the Crunch website. While this is unfortunate, it certainly does not suggest that this action was brought in bad faith, or that anyone's conduct was unreasonable or vexatious. Almost immediately following the deposition—as soon as Plaintiff realized that it would no longer be productive to litigate this case as a class action—Plaintiff sought voluntary dismissal of the action. This was entirely reasonable and consistent with counsel's duties.

### C. Plaintiff Did Not Contradict Himself at His Deposition.

Defendants point to Plaintiff's statement at his deposition that "recently I was told that I did visit a website" to suggest that he did not visit Defendants' website on November 28, 2017, as plead in the Complaint. This is totally wrong. Defendants have taken Plaintiff's statement entirely out of context to make it sound like he said something other than what he did. A casual reading of the full exchange reveals otherwise:

> Q. When was the first time you recall visiting the Crunch website?
>
> A. I don't recall that at all.
>
> Q. You don't recall ever visiting a Crunch Website?
> Are you familiar with a company called Hub Spot?
>
> A. Hub?
>
> Q. Hub Spot.
>
> A. Hub Spot. No.
> Maybe if I see a logo or something I would probably be familiar.
>
> Q. Okay. It's --
>
> A. Hub Spot.
>
> Q. Well, let me – let me ask you this:
> How was it or how was it that you understand you were contacted by Crunch?
>
> A. Huh, well, recently I was told that I did visit a website. I just don't recall visiting that website.
>
> Q. Okay.
>
> A. When I made a – made a complaint against Crunch, to my knowledge, I have never made contact with them at all. Never walked into a store.
>
> Q. Okay.
>
> A. Never walked into a booth at an event.

7

> Q. Okay.
>
> A. Or any of that.
>
> Q. Okay. You don't have any reason to believe that you ever visited the website?
>
> A. The website; no. I mean, I don't – I don't see why – I mean, I would remember if I put Crunch.com. I don't know if it was a third party that it went through. Huh, but I know I don't – I don't recall.

*See* (Dep. of Pl., ECF No. 79-8, p. 101:9-102:19). Reading this, Defendants' line of questioning was not about Plaintiff's visit to Defendants' website, but about his familiarity with a company called "Hub Spot." *Id.* For clarity, "Hub Spot" is the company that produces Defendants' customer relationship management software.[4] This software allows Defendants to internally track visitors to its website and review their behavior. *See generally Exhibit D*.

It is unclear why Defendants decided to press Plaintiff on his familiarity with Hub Spot, as he would have no reason to know what it is. The undersigned counsel did not become aware of Hub Spot until Defendants produced their "activity log" showing Plaintiff's interactions with their website. *See Exhibit D.* This log was generated internally by Defendants using the Hub Spot software. *Id.* Plaintiff himself would have no reason to know what it means, and it is unfair to expect otherwise.

Defendants are adamant that Plaintiff's statement that "recently I was told that I did visit a website" means that he did not in fact visit Defendants' site, but reading the whole exchange, this is clearly not what he said. He said "recently I was told that I did visit a website. I just don't recall visiting *that* website." (Dep. of Pl., ECF No. 79-8, p. 102:1-3) (emphasis supplied). When Plaintiff said this, he was responding to questions about whether he was familiar with "Hub Spot."

---

[4] *See* https://www.hubspot.com/ (last visited August 23, 2018).

As to Plaintiff's statement that he was "told" that he "did visit a website," he could have meant virtually anything by this. Perhaps someone reminded him that he visited a website on that day, and he wasn't sure if it was "Hub Spot." Perhaps he was referring to Defendants' own contention that he visited their website. Or maybe he was confused about whether "Hub Spot" and "Crunch" are the same thing. Or maybe there was some other explanation. In any event, Defendants had every opportunity to explore Plaintiff's response at his deposition, but they decided not to ask any follow-up questions. While Defendants did ask some additional questions about Plaintiff's visit to the website, they did so only in the context of the "Hub Spot" activity log previously produced by Defendants. *See id.* at 101:14-105:11; *see also Exhibit D hereto*. Again, this document was generated internally using the Hub Spot software. Plaintiff himself would have no reason to know what it contained.

Reading Plaintiff's testimony in context, all he said was that he did not recall submitting his information on the Crunch website. *Id.* at 101:9-11. When asked "When was the first time you recall visiting the Crunch website," he answered, "I don't recall that at all." *Id.* The examiner then asked "You don't recall ever visiting a Crunch website? Are you familiar with a company called Hub Spot?" *Id.* at 101:12-15. This was two questions, one of which was about the "Crunch website," and one of which was about "Hub Spot." Plaintiff could not possibly have understood what the examiner was talking about by this point.

To be sure, Plaintiff's inability to recall details of the origin of this case is unfortunate. As a result, it was determined that Plaintiff would not be a suitable class representative, and consequently, he sought voluntary dismissal of the action without prejudice. This does not mean, however, that "much, if not all" of Plaintiff's claims lacked a legal or factual basis, or that "the case was a sham," as argued by Defendants.

9

Plaintiff's deposition took place nearly six months after his visit to Defendants' website. It is not unreasonable for a person to forget or become confused about which web forms he submitted over the preceding year, or how he or she ended up at one particular website on a particular date. This is especially true when the examiner chooses to ask questions about an unrelated subject at the same time. In this case, Defendants' examination focused not on whether Plaintiff visited Defendants' website, but upon Plaintiff's familiarity with Hub Spot, and on the Hub Spot activity log. *See id.* at 101:9-105:18. This would have confused anyone. Plaintiff's answers were entirely consistent with a person who had never heard of Hub Spot.

Rather than acknowledge this, Defendants doubled down on their mission to reclaim their attorneys' fees from Plaintiff and continue to needlessly multiply this litigation without a good faith basis. Accordingly, Defendant's motion must be denied.

## II. Defendants Are Not Entitled to Attorney's Fees Under the Inherent Authority of the Court.

Next, Defendants argue that they are entitled to attorneys' fees pursuant to the inherent authority of the Court. "Invocation of a court's inherent power requires a finding of bad faith." *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995). As explained *supra*, Defendants have identified no instances of bad faith conduct by Plaintiff or the undersigned attorneys. Accordingly, Defendant's motion must be denied.

The only conduct Defendants assert was wrongful is Plaintiff's supposed "false statement" that Plaintiff visited Defendants' website. Again, as discussed exhaustively *supra*, Plaintiff visited Defendants' website on November 28, 2017, and submitted his personal contact information. All evidence produced in this case is consistent with that simple reality. Defendants continually accuse the undersigned of suborning this "false statement," but the record evidence is that Plaintiff did visit the website, and simply did not recall doing so at the

time of his deposition. This hardly suggests bad faith. Defendants advance no record evidence to the contrary, and consequently, their motion must be denied.

**III.   This Is Not a "Manufactured Lawsuit."**

In two places in their motion, Defendants appear to argue that Plaintiff's counsel "manufactured" this case. First, on page 5, Defendants claim that "this case was dismissed soon after Plaintiff's deposition so that Defendants had no opportunity to discover who had inputted Plaintiff's telephone number on the Crunch website in order to manufacture a claim." *Id.* Later, on page 7, Defendants aver that "Plaintiff's counsel either inputted Plaintiff's information on Crunch's website and then told Plaintiff to testify that he had visited the website or, at a minimum, failed to do their Rule 11 mandated due diligence." *Id.* at 7.

Plaintiff's counsel strongly resent these implications of wrongdoing. Since the commencement of this action, Plaintiff's counsel have prosecuted this case ethically, zealously, and competently. Defendants advance no evidence to support their suggestion that someone "manufactured" this claim, nor do they explain what "manufacturing" a claim means, or how it would even be relevant to this motion. Instead, Defendants fling wild accusation after wild accusation without any evidence or meaningful argument. Nevertheless, this accusation must be addressed.

On July 20, 2018, Defendants served their draft motion for attorneys' fees on Plaintiff, as required by Local Rule 7.3(b).[5] In that draft motion, Defendants alleged, as here, that they are entitled to sanctions because Plaintiff supposedly never visited Defendants' website. *See Exhibit*

---

[5] Local Rule 7.3(b) requires that "[e]xcept as to any aspect of a fee claim upon which the parties agree, a draft motion compliant with Local Rule 7.3(a)(1)-(8) must be served but not filed at least thirty (30) days prior to the deadline for filing any motion for attorneys fees and/or costs that is governed by this Local Rule." A true and correct copy of Defendants' draft motion for attorneys' fees, as circulated on July 20, 2018, is attached hereto as *Exhibit F*.

11

*F.* Following receipt of that draft motion, Plaintiff sent a conferral letter to Defendants informing them that Plaintiff did indeed visit their website on November 28, 2017 and reminding them that they had previously stated as much in their own discovery responses. Based upon this, Plaintiff further advised Defendants that their draft motion had no basis in fact and should not be filed.

Realizing their dilemma, Defendants apparently decided to solve the problem by filing a materially different motion than the draft they circulated on July 20, 2018. *Id.* While the instant motion does appear similar to the draft, Defendants slipped in a few extra sentences to try to evade the obvious fatal flaw in their motion. *Id.* Specifically, Defendants twice suggest that this was a so-called "manufactured claim." *See* (Def. Mot. for Attys' Fees., ECF No. 79, pp. 5, 7); *Id.*

The suggestion that someone "manufactured" this case did not appear in Defendants' draft motion, nor does it appear anywhere in this motion apart from those two sentences. Defendants identify no facts to support this new theory, nor have they ever asserted it before in this case. Defendants also do not explain why the fact that "this case was dismissed soon after Plaintiff's deposition" meant that "Defendants had no opportunity to discover who had inputted Plaintiff's telephone number on the Crunch website in order to manufacture a claim." *Id.* In fact, Defendants do not advance *any* legal argument about this alleged conduct whatsoever.

Defendants conjured this new theory after being reminded that Plaintiff visited their website on November 28, 2017 according to their own discovery responses. This is because they knew that their original draft motion had no basis in reality. In consequence, they had to invent a new theory in order to justify filing this motion at all. The Court should not countenance this behavior.

Defendants' motion is full of vitriol, but devoid of substance. It amounts to nothing more than an impudent, frivolous attack against opposing lawyers who should otherwise be regarded as colleagues. Accordingly, the Court should give Defendants' new argument short shrift, and deny their motion.

**IV.     Local Rule 7.3(b) Does Not Entitled Defendants to $493,266.05 in Attorneys' Fees.**

Finally, Defendants argue that Plaintiff did not comply with the strictures of Local Rule 7.3(b) because they are unsatisfied with Plaintiff's conferral letter advising them that their draft motion was baseless. While it is true that Plaintiff did not painstakingly review Defendants' outrageous, hundreds-of-pages-long request for $493,266.05 in attorneys' fees, this is only because Defendants have failed to establish any basis for entitlement to them.

Defendants argue that they are entitled to fees because of the Order Granting in Part and Denying in Part Plaintiff's Motion to Dismiss [ECF No. 78], but this was not an order of entitlement. On the contrary, the order stated only that the Court "shall retain jurisdiction to adjudicate issues related to Defendants' attorneys' fees and costs20 [sic] pursuant to 28 U.S.C. § 1927, Rule 11, or any other similar relief available to Defendants." *Id.* at p. 4. An order expressly retaining jurisdiction to adjudicate issues relating to attorneys' fees is not the same as an order of entitlement to said fees. Further, in the order of dismissal, this Court explicitly held that "on the record before me, I cannot say that this action was baseless at the time it was filed." [ECF No. 78, p. 3]. Defendants' motion, though full of sound and fury, advances no new record evidence. Accordingly, while Defendants' motion suggests that they have already established their entitlement to attorneys' fees, this is clearly wrong.

13

## **CONCLUSION**

28 U.S.C. § 1927 imposes a "steep burden" on the moving party to establish entitlement to sanctions. *Group*, 2013 WL 12177058, at *2. "The standard for imposing § 1927 sanctions is necessarily high; such sanctions are 'penal in nature' and, accordingly, 'the [Court's] power ... should be exercised only in instances of a serious and studied disregard for the orderly processes of justice.'" *Id.* (internal citations omitted). Defendants have failed to meet this steep burden. They advance no new evidence to substantiate their wild accusations. This Court ruled on June 20, 2018, that "on the record before me, I cannot say that this action was baseless at the time it was filed." [ECF No. 78, p. 3]. Since then, nothing has changed. Accordingly, Defendants' motion must be denied.

Dated this 28th day of August, 2018.

By: */s/ Scott D. Owens, Esq.*
   Scott D. Owens, Esq.
   Florida Bar No. 597651

   Scott D. Owens, Esq.
   SCOTT D. OWENS, P.A.
   3800 S. Ocean Dr., Ste. 235
   Hollywood, FL 33019
   Telephone: (954) 589-0588
   Facsimile: (954) 337-0666
   scott@scottdowens.com

   BRET L. LUSSKIN, Esq.
   20803 Biscayne Blvd., Ste 302
   Aventura, Florida 33180
   Telephone: (954) 454-5841
   Facsimile: (954) 454-5844
   blusskin@lusskinlaw.com

   Jibrael S. Hindi, Esq.
   THE LAW OFFICE OF JIBRAEL S. HINDI, PLLC.
   110 SE 6th Street
   Ft. Lauderdale, FL 33301

14

>Telephone: (954) 907-1136
>Facsimile: (855) 529-9540
>jibrael@jibraellaw.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on August 28th, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

>By: */s/ Scott D. Owens, Esq.*
>   Scott D. Owens, Esq.
>   Florida Bar No. 597651