UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 17-62416-Civ-COOKE/HUNT

BILAL SALEH, individually and on
behalf of a class of others similarly
situated,

    Plaintiff,

vs.

CRUNCH, LLC, a Delaware limited
liability company, CRUNCH
FRANCHISING, LLC, a Delaware
limited liability company and DELIU,
LLC, a Delaware limited liability
company doing business as Crunch
Fitness Oakland Park,

    Defendants.
_____/

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND OTHER NON-TAXABLE COSTS [D.E. 80]**

Defendants Crunch, LLC, Crunch Franchising, LLC, and Deliu, LLC (collectively "Defendants") submit their Reply to Plaintiff's Response in Opposition to Defendants' Motion for Attorneys' Fees and Other Non-Taxable Costs [D.E. 80].

### I.    INTRODUCTION

Defendants moved for attorneys' fees pursuant 28 U.S.C. § 1927 and the inherent power of the Court based upon Plaintiff BILAL SALEH ("Plaintiff") and his counsel filing and continuing to litigate a claim when they knew or should have known that they lacked any factual or legal basis to support a class action suit based upon a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). [D.E. 79]. Defendants filed their Motion for Attorneys' Fees and Other Non-Taxable Costs ("Motion for Fees") in response to an order granting

1

Plaintiff's Motion for Voluntary Dismissal Without Prejudice [D.E. 72], which stated that Defendants could file a motion for attorneys' fees pursuant to 28 U.S.C. § 1927, Rule 11, or any other similar relief. [D.E 78 at 3]. Defendants filed their Motion for Fees stating the basis for both entitlement and the amount of fees and costs sought by each Defendant.[1]

Plaintiff then filed his Response in Opposition to Defendants' Motion for Attorneys' Fees and Other Non-Taxable Costs (the "Opposition"). [D.E. 80]. The Opposition primarily argues that: (1) Defendants' responses to Plaintiff's discovery purportedly confirmed that Plaintiff had in fact visited the Crunch corporate website (even though Plaintiff admitted under oath that he had not); (2) Plaintiff did not contradict himself at his deposition (although this Court concluded he had); and (3) Plaintiff's counsel did not act in bad faith or manufacture claims in the lawsuit.[2] As a result, Plaintiff argues that there is no basis for entitlement of fees under 28 U.S.C. § 1927 or the Court's inherent power. Plaintiff fails to address Defendants' primary argument related to the blatant and egregious inconsistencies between Plaintiff's allegations in the Complaint, his verified interrogatory responses, and his deposition testimony. While the Opposition tries to walk back Plaintiff's deposition testimony, it tellingly fails to attach a declaration from Plaintiff. Plaintiff and his counsel also fail to present any argument or evidence that they conducted even the most minimal investigation or due diligence prior to the commencement of the lawsuit or during the lawsuit when they were representing to the Court in multiple filings that Plaintiff had visited the Crunch website in an effort to expand discovery to include as many as hundreds of Crunch Fitness® businesses around the country, thereby making the case expensive to litigate.

---

[1] Pursuant to Local Rule 7.3(b), Defendants served a draft of the Motion for Fees on Plaintiff for the purpose of conferral regarding the entitlement and amount. Plaintiff opposed entitlement but in violation of Local Rule 7.3(b) did not object to the amount of fees sought or to any of the proffered time entries.

[2] Despite counsel's protestations, the allegation that it appears someone tried to manufacture a baseless claim in this lawsuit is not new. *See* D.E. 74 at 5. Defendants' Motion for Fees merely responded to counsel's letter.

## II. LEGAL ARGUMENT

### A. DEFENDANTS' INTERROGATORY RESPONSES ARE NOT AN ADMISSION THAT PLAINTIFF ENTERED HIS PHONE NUMBER AND THAT THE ALLEGATIONS IN THE COMPLAINT WERE TRUE AND ACCURATE

Plaintiff's primary argument is that Defendants' responses to Plaintiff's interrogatories stating that Plaintiff visited the website confirm the accuracy of both the Complaint and Plaintiff's own prior interrogatory responses. This argument is a red herring. Moreover, it is unfounded and does nothing to resolve Plaintiff's own inconsistencies. Defendants based their responses on the allegations in the Complaint that a certain telephone number belonged to Plaintiff and Plaintiff was the individual who had inputted his personal information on the Crunch website. Having found Plaintiff's telephone number in their system, there was no reason at the time for Defendants to suspect that someone else may have entered Plaintiff's telephone number without his knowledge. Defendants have no way of ascertaining *who* entered Plaintiff's personal information, only that it was entered on the website.[3] It was not until Plaintiff testified that he had never visited the website that Defendants' learned that someone else must have inputted his information and therefore the entire case was predicated on a fraud.

The Complaint alleges that on November 28, 2017, Plaintiff visited the Crunch corporate Defendants' website and entered his personal information (including a specific telephone number alleged in this case to be Plaintiff's) in order to receive a free one-day trial membership to a Crunch Fitness® gym. [D.E. 1 at ¶¶ 20-23]. Accordingly, Defendants' response to the subject interrogatory was as follows:

> ***Interrogatory No. 12:*** *State the manner in which you obtained telephone number (954) 536 3231, from whom it was obtained, and when it was obtained.*
>
> **Response:**

---

[3] Additionally, the activity log referenced by Exhibit "D" of the Opposition only shows that Plaintiff's information was entered on the website. It does not identify the individual who actually inputted the information.

3

>    Crunch objects to this Request as compound insofar as it requires a response to multiple questions. Crunch states that individuals may request a free gym pass by filling out a form on Crunch's website: www.info.crunch/com/free-trial. The form requests the person's first name, last name, e-mail, phone number, and location of interest. Individuals are not required to provide a mobile phone number, and the form itself does not specify what type of phone number is required. On November 28, 2017, plaintiff visited Crunch's website, filled out a free trial form, and voluntarily input his mobile phone number on the free trial form.

Defendants had no reason to doubt or question that Plaintiff visited the website to enter his personal information. The interrogatory response is also consistent with Plaintiff's verified responses to Defendant Crunch, LLC's First Set of Interrogatories that "Plaintiff visited Defendants' website, www.crunch.com on November 28, 2017, at which time he clicked on the link, "FREE TRIAL," after which he was directed to fill out an online form 'for a 1-day pass to try us out.'" Plaintiff did not visit the gym. [D.E. 74-1 at 3].   As the Court noted in its Order of dismissal, this interrogatory response was served approximately one week before "Plaintiff gave contradictory deposition testimony." [D.E. 78 at 3].

Plaintiff is incorrect that Defendants' interrogatory response confirms the veracity of the allegations in the Complaint.  The entire point of the Motion for Fees is that Plaintiff – through his own testimony – completely contradicted both his own allegations in the Complaint and his own *verified* interrogatory responses and therefore exposed the vexatious nature of prosecuting such a claim:

>    Q.    Okay. You don't have any reason to believe that you ever visited the website?
>
>    A.    *The website; no.  I mean, I don't – I  don't see why -- I mean, I would remember if I put Crunch.com.  I don't know if it was a third party  that it went through.  Huh, but I know I don't – I don't recall.*

(Saleh Dep. May 17, 2018, 174:5-10; 102:13-19)

>    Q.   *You don't think you viewed the Crunch Fitness pages on any of those pages either?*

>    A.  Nope.

(*Id*. at 104:16-18)

>    Q.    Do you see paragraph 20 reads, and I will just read the whole thing for you.  "On or about November 28, 2017, Plaintiff visited defendants website, www.crunch.com, and at which time he clicked the link 'free trial,' after which he was directed to fill out an online form for a one-day pass to try us out."  Do you see that?
>
>    A.  Uh-huh.
>
>    Q.  You don't think you visited the Crunch website, correct?
>
>    A.   No.
>
>    Q.  And then if you look at paragraph 21 do you see that it says the form asks for plaintiff's first name --
>
>    A.  Yeah.
>
>    Q.   -- last name, e-mail, phone number and location of interest. You don't recall ever providing your phone number on the Crunch website?
>
>    A.  No.
>
>    Q.  Okay.
>
>    A.  Unless I filled out a form that didn't look like a Crunch website, and autofill.  But I don't recall going into Crunch.com and requesting that.  I don't at all.

(*Id*. at 111:6-26; 112:1-6)

>    Q.  Yeah.  I think I asked you before, let me ask you just to make sure:  Do you recall ever looking at the form of a Crunch website?
>
>    A.  (Head nod no.)  No.

(*Id*. at 112:13-16)

Plaintiff also testified that "it doesn't make any sense for me to sign up to Crunch" because the location was "nowhere near me," and he testified that he would have never provided his

5

personal information to Crunch, let alone his cell phone number, because he is "very careful" with who he provides his information to. (*Id*. at 106:19-107:13, 113:4-114:3).

These are stunning, numerous, and emphatic contradictions of Plaintiff's repeated position that he visited Defendants' website and entered his personal information. The only possible interpretation based upon the numerous denials contained in the testimony is that Plaintiff had no idea of the position taken on his behalf in the Complaint and that Plaintiff never personally responded to the interrogatories. Defendants' interrogatory responses are completely irrelevant to Plaintiff's testimony and cannot be considered more accurate than Plaintiff's own version of events.

Moreover, Plaintiff and his counsel are not automatically relieved of their responsibility in commencing the litigation simply because they decided to dismiss the case after such disastrous deposition testimony. Plaintiff's counsel knew or should have known from the outset that Plaintiff never visited the website and this lack of basic knowledge—either by oversight or intent—forced the parties to engage in needless discovery and motion practice that only served to multiply the proceedings. [4]

Plaintiff should not be commended simply because he dismissed the action when it became evidently unsustainable – that would eviscerate the purpose of Rule 11's duty to conduct a diligent investigation before making factual representations to the Court. Plaintiff's and counsel's behavior

---

[4] For example, Plaintiff and his counsel admit that the only evidence adduced at Textmunication's deposition was that Textmunication had sent the text messages to Plaintiff's number after Plaintiff, it turns out, did not enter his cell phone on the Crunch website. [D.E. 80 at 4]. In fact, Wais Asefi testified that Textmunication had never done any work for the Crunch Defendants. Textmunication has individual franchisees as clients. (Dep. of Wais Asefi, April 13, 2018, 81: 13-23) *See also* [D.E. 80-5 at 21]. Yet, Plaintiff and his counsel used the Crunch website as a hook to sue the Crunch Defendants and try to certify a class that would, at its greatest reach, apply to every single Crunch Fitness® business in America. Plaintiff then sought exceedingly broad class-based discovery not just from the Crunch Defendants but from *all of their other franchisees* who were never alleged to have sent a single unauthorized text.

6

in maintaining and continuing to prosecute their baseless claim is objectively unreasonable and vexatious—and improperly multiplies the proceedings. *See Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997) (an attorney's conduct "multiplies proceedings" when it "results in proceedings that would not have been conducted otherwise.").

      **B.**    **PLAINTIFF'S DEPOSITION TESTIMONY CLEARLY STATED THAT HE WAS TOLD THAT HE VISITED DEFENDANTS' WEBSITE**

In light of the above excerpts, it is remarkable that the Opposition insists that "[a]all of the Allegations Set Forth in the Complaint are True" [D.E. 80 at 6] and that "Plaintiff Did Not Contradict Himself at his Deposition" [*Id.* at 7]. The section in the Opposition stating that Plaintiff's deposition testimony referenced the website for "Hub Spot" and not "Crunch.com" is particularly disingenuous and is an effort to deny the obvious. In response to Defendants' opening brief which pointed out testimony from Plaintiff that he was "told" he had visited the Crunch website (Saleh Dep. May 17, 2018, 102:1-2), the Opposition wrongly argues that this statement was not in reference to the Crunch website but another website and that Defendants have taken "Plaintiff's statement entirely out of context to make it sound like he said something other than what he did." [D.E. 80 at 7]. The Opposition then excerpts Plaintiff's deposition testimony to support its position, but the only rational interpretation of the testimony is that Plaintiff is clearly referring to "Crunch.com":

> Q.    *Well, let me – let me ask you this: How was it or how was it that you understand you were contacted by __Crunch__?*
>
> A.    *Huh, well, recently I was told that I did visit a website. I just don't recall visiting that website.*
>
> Q.    *Okay.*
>
> A.    *When I made a – made a complaint against __Crunch__, to my knowledge, I have never made contact with them at all. Never walked into a store.*

7

> Q.    Okay.
>
> A.    *Never walked into a booth at an event.*
>
> Q.    Okay.
>
> A.    *Or any of that.*
>
> Q.    *Okay. You don't have any reason to believe that you ever visited the website?*
>
> A.    *The website; no. I mean, I don't – I don't see why – I mean, I would remember if I put **Crunch.com**. I don't know if it was a third party that it went through. Huh, but I know I don't – I don't recall.*

(Saleh Dep. May 17, 2018, 101: 23-25; 102: 1-19)

Plaintiff expressly references "Crunch.com" multiple times without direct reference to "Hub Spot." There can be absolutely no confusion as to what website is being referenced in this line of questioning. Plaintiff is certainly not being "pressed on his familiarity with Hub Spot" by Defendants [D.E. 80 at 8]. The Opposition then speculates as to Plaintiff's testimony that he was told he visited a website:

> Perhaps someone reminded him that he visited a website on that day, and he wasn't sure if it was "Hub Spot." Perhaps he was referring to Defendants' own contention that he visited their website. Or maybe he was confused about whether "Hub Spot" and "Crunch" are the same thing. Or maybe there was some other explanation [*Id*. at 9].

Plaintiff or its counsel could have avoided this misleading speculation by providing an affidavit about what their client meant, if he was not talking about the Crunch website (despite the clear testimony). Plaintiff and his counsel do not attach any affidavit or declaration to the Opposition to clarify the testimony or support their position.

Additionally, the transcript makes clear that Plaintiff's counsel made no objection as to the form of the question or whether there was any confusion as to what website was being referenced in the line of questioning. Presumably, everyone at the deposition knew Plaintiff was testifying

8

about never visiting "Crunch.com," which also was confirmed numerous times throughout the testimony, and that was the basis for counsel's dismissal of the case. [D.E. 72 at 3]. The unsupported attorney argument and speculation in the Opposition regarding the intent of their client's testimony is an attempt at obfuscation that further exemplifies why sanctions are appropriate in this case.

### C.   THE OPPOSITION DOES NOT ADDRESS DEFENDANTS' ARGUMENTS THAT SANCTIONS SHOULD BE IMPOSED PURSUANT TO THE COURT'S INHERENT AUTHORITY

The Opposition fails to address Defendants' arguments regarding the basis for the Court to sanction Plaintiff and his counsel under its inherent authority. Specifically, Plaintiff does not address the argument that "The discovery of the falsity should have been apparent in a pre-suit investigation and obviated the need to proceed with the current lawsuit." [D.E. 79 at 9]. Rather, the Opposition simply makes the following conclusory statement: "Defendants have identified no instances of bad faith conduct by Plaintiff or the undersigned attorneys" [D.E. 80 at 10]. This is incorrect.

The Motion for Fees argues that sanctions based on the inherent power of the Court should be based upon a lack of investigation into Plaintiff's claims prior to filing suit. In this jurisdiction, a counsel's failure to investigate the plaintiff's claims prior to filing the complaint is tantamount to bad faith and, therefore, warrants the imposition of sanctions by the court. *Rodriguez v. Marble Care Int'l, Inc.*, 863 F. Supp. 1168, 1179 (S.D. Fla. 2012). The Opposition is conspicuously silent as to what—*if any*—investigation was performed by Plaintiff's counsel into the facts of this case. It also fails to attach a declaration by Plaintiff's counsel as to any investigation performed into Plaintiff's claims. It is simply inconceivable that Plaintiff's counsel would first learn that Plaintiff never visited Defendants' website at Plaintiff's own deposition, yet base their prior allegations,

9

discovery responses, and motion practice on the fact that he had inputted his information on the Crunch website. Plaintiff's entry of his personal information goes to the heart of his TCPA claim and his attempt to hold (1) the Crunch Defendants vicariously liable by virtue of having operated a website that (2) hundreds of the Crunch Defendants' franchisees must also use. Plaintiff's counsel did not investigate Plaintiff's claim resulting in the needless expenditure of time, resources, and money that Defendants should be reimbursed.

Plaintiff's counsel's failure to investigate is particularly egregious considering the volume of cases brought by Plaintiff's counsel involving the TCPA and that they had chosen this particular Plaintiff to act as the class representative for this claim. *See* [D.E. 79-1] showing Plaintiff's counsel's involvement with one hundred and seven (107) TCPA cases. The Opposition provides no rationale for Plaintiff's counsels' failure to investigate or perform required due diligence – both before filing suit and while the case was being litigated – which shows bad faith. In determining whether sanctions should be awarded under the bad faith standard, "the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case." *Barash v. Kates*, 585 F. Supp. 2d 1347, 1362 (S.D. Fla. 2006) (quoting *Rothenberg v. Sec. Mgmt. Co., Inc.,* 736 F.2d 1470, 1472 (11th Cir.1984)); *Barash v. Kates*, 585 F. Supp. 2d 1347, 1362 (S.D. Fla. 2006).

"If particularly egregious, the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith." *Dent v. Giaimo*, 665 F. Supp. 2d 1295, 1303 (S.D. Fla. 2009) (quoting *Barnes v. Dalton,* 158 F.3d 1212, 1214 (11th Cir.1998)). Here, Plaintiff and his counsel made *no showing* that they conducted a reasonable inquiry or any inquiry at all. Therefore, this Court should award the Defendants their attorney's fees and costs as sanctions pursuant to the Court's inherent authority.

*Respectfully submitted*,

SILVERBERG & WEISS, P.A.
*Counsel for Defendants*
1290 Weston Road, Suite 218
Weston, Florida 33326
Primary e-mail: Notices@pkslegal.com
Tel: (954) 384-0998/ Fax: (954) 384-5390

By: _/s/ Paul K. Silverberg_____
      Paul K. Silverberg, Esq.
      Fla. Bar No. 147877

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy hereof has been served via email on the following this 11th day of September 2018:

Andree Quaresima, Esq.
Scott D. Owens, Esq.
Sean Martin Holas, Esq.
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Telephone: (954) 589-0588
Facsimile: (954) 337-0666
andree@scottdowens.com scott@scottdowens.com
sean@scottdowens.com don@scottdowens.com patrick@scottdowens.com
shannon@scottdowens.com

Jibrael S. Hindi, Esq.
THE LAW OFFICE OF
JIBRAEL S. HINDI, PLLC
110 SE 6th Street
Fort Lauderdale, FL 33301
Telephone: (954) 907-1136
Facsimile: (855) 529-9540
jibrael@jibraellaw.com

Bret L. Lusskin, Esq.
BRET LUSSKIN, P.A.
20803 Biscayne Blvd., Suite 302
Aventura, FL 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844

blusskin@lusskinlaw.com
*Counsel for Plaintiff*

          By: */s/ Paul K. Silverberg*
            Paul K. Silverberg, Esq.